IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JANET R. NORRED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:05cv22-C |
| | ) | (WO) |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. Introduction

The plaintiff, Janet R. Norred, applied for disability insurance benefits pursuant to Title

II of the Social Security Act,  42 U.S.C. § 401 *et seq*., alleging that she was unable to work

because of a disability.  Her application was denied at the initial administrative level.  Norred

then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following

the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request

for review.  The Appeals Council's decision consequently became the final decision of the

Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. § 405 (g) and

§ 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have

consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

review of the record in this case and the briefs of the parties, the court concludes that the

decision of the Commissioner should be reversed and this case remanded to the Commissioner

for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically determinable
> physical or mental impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period of not less than 12
> months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative answer
> to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological
abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The
same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as
authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

find the Commissioner's decision conclusive if it is supported by substantial evidence.  42

U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence

is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record

which support the decision of the ALJ but instead must view the record in its entirety and take

account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*,

804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] . . . factual findings . . . No similar
> presumption of validity attaches to the [Commissioner's] . . . legal conclusions,
> including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Administrative Proceedings

Norred was 46 years old at the time of the hearing before the ALJ.  (R. 231.)  She has

completed the ninth grade and has a high school equivalency diploma. (*Id*.) Norred's prior work

experience includes working as a machine operator, a quality control person, and a fixer.  (R.

231.)  Norred alleges that she became disabled due to back pain, a thyroid condition, and

depression. (R. 49, 233-34, 237.) Following the administrative hearing, the ALJ concluded that

Norred has severe impairments of lumbar disc disease, depression, and hypothyroidism. (R. 18.)

The ALJ found that Norred "retains the residual functional capacity to perform the exertional

demands of light work."  (R. 19.)  Relying on the testimony of the vocational expert, the ALJ

3

concluded that there were a significant number of jobs in the national economy that the plaintiff could perform.  (R. 20)  Accordingly, the ALJ concluded that Norred was not disabled.  (*Id*.)

### IV.  The Plaintiff's Claims

As stated by Norred, she presents the following issues for the court's review:

(1)     The ALJ failed to properly apply the Eleventh Circuit's three part pain standard.

(2)     The ALJ failed to properly consider the opinions of Plaintiff's treating physicians.

(3)     The ALJ failed to properly report and state the weight to be given her own consultative examiner.

(Doc. # 9 at pp. 5, 8, 10.)

### V.  Discussion

### A.  The Pain Standard

Norred contends that the ALJ failed to properly evaluate her subjective complaints of back pain.  During the hearing before the ALJ, Norred testified that, on at least four occasions over a two to three month period since 1998, she suffered from severe pain running from her lower back to her foot.  (R. 233-34.)  Norred stated that, during these episodes, she "can barely walk" and that "you can't sit, you can't stand, you can't lay, you can't – you just have to suffer through that period of time and take pain medication."  (R. 233.)

The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires evidence of an underlying medical condition

*and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.

The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11ᵗʰCir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. This standard requires that the articulated reasons be supported by substantial reasons. If there is no such support, the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11ᵗʰ Cir. 1987).

The medical evidence demonstrates that Norred suffers from and underlying condition which reasonably could cause back pain. For example, in February 2002, x-rays of Norred's spine indicated that she suffers from degenerative arthritic changes and mild disk narrowing at L5-S1. (R. 181.) In March and April of 2002, Dr. Jeff L. Stewart, a physician at the Woodland Clinic, diagnosed Norred as suffering from lower back pain and a strained lumbar disk. (R. 197-199.) Therefore, Norred meets the first prong of the pain standard.

However, the ALJ determined that Norred's testimony of disabling pain was not credible. Specifically, the ALJ determined:

> The undersigned finds that the claimant's statements concerning her impairments and their impact on her ability to work cannot be fully credited. While the medical evidence reveals that the claimant has lumbar disc disease, depression, and hypothyroidism, the objective medical evidence does not support

5

> the severity of symptoms alleged by the claimant.  The physical
> capacities evaluation submitted by the claimant's treating
> physician (Exhibit 8F) was considered, but it is not supported by
> the medical evidence of record.  The treatment notes from Dr.
> Stewart and his assistant Mr. Caypless are generally unremarkable
> examinations.  (Exhibits 3F and 7F).  The claimant described
> debilitating episodic back pain, but the only objective medical
> evidence of back pain is during March and April 2002 (Exhibit
> 7F).  Dr. Stewart opined that the claimant's pain was moderate
> (8F).  His restrictions are based on the claimant's need to change
> positions frequently.  This is inconsistent with what the claimant
> told the consultative examiner.  She said that she could sit and
> stand for a long time and walk for two hours.  (Exhibit 5F).  The
> treating physician's assistant Caypless summarized the claimant's
> treatment and condition.  He described impairments that are
> generally controlled by treatment.

(R. 19.)

Substantial evidence in the record supports the ALJ's finding that the medical records are inconsistent with Norred's allegations that she suffers disabling pain.  Although Norred received back surgery and frequently sought treatment for her complaints of back pain in 1998 (R. 131, 139, 211-213), the medical records demonstrate that she did not seek further treatment for back pain until 2002 (R. 197-199).  On March 13, 2002, Norred presented to Dr. Stewart with complaints of lower back pain radiating into her legs over a two week period.  (R. 199.)  She was diagnosed as suffering from lower back pain and prescribed Celebrex[4] and Skelaxin.[5]  (*Id*.)  On March 27, 2002, Norred returned to Dr. Stewart, reporting that the prescribed medication was helpful and requesting additional medication.  (R. 198.)  Norred received an injection of

---

[4] Celebrex is used for the treatment of joint pain, inflammation, swelling, and other symptoms of arthritis.  *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Celebrex%AE.

[5] Skelaxin is a muscle relaxant used to treat muscle spasms.  *See* http://www.rxlist.com/ cgi/pharmclips2.cgi?keyword=%20Skelaxin%AE.

Xyloeaine[6] and a prescription for Lortab[7] and Celebrex.  (*Id.*)  On April 15, 2002, Norred

presented to Dr. Stewart with complaints of lower back pain and received an injection of

Marcaine.[8] (R. 197.)  Thus, the only evidence of Norred receiving treatment for her complaints

of back pain after her alleged date of disability was in March and April of 2002.  It is axiomatic

that the claimant bears the burden of supplying adequate records and evidence to prove their

claim of disability.  *See* 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5

(1987) ("It is not unreasonable to require the claimant, who is in a better position to provide

information about his own medical condition, to do so.").  Norred also relies on an x-ray taken

on February 8, 2002, as support for her argument that she suffers from disabling pain.  While the

radiologist's report states that the x-ray indicates the presence of "degenerative arthritic change,"

the radiologist also notes that the "[v]ertebral eight and disk space were well maintained, except

for slight disk narrowing at l-5-S1."  (R. 181.)  The court therefore concludes that the ALJ's

determination that Norred sought limited treatment for her complaints of back pain and that the

objective medical evidence does not support the severity of symptoms alleged by the claimant

is supported by substantial evidence.

The ALJ considered that Norred's underlying condition was capable of giving rise to

some pain; however, she concluded that her condition was not so severe as to give rise to the

---

[6] Xylocaine is a local anesthetic given by injection to cause the loss of feeling during surgery, labor, and dental procedures. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Xylocaine%AE.

[7] Lortab is an analgesic narcotic used for pain relief. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Lortab%AE

[8] Marcaine is a local anesthetic given by injection to cause the loss of feeling during surgery, labor, and dental procedures.  *See* http://www.rxlist.com/cgi/pharmclips.cgi?keyword=Marcaine.

7

disabling pain as alleged.  The ALJ has discretion to discredit a claimant's subjective complaints as long as she provides "explicit and adequate reasons for [her] decision."  *Holt*, 921 F.2d at 1223.  A reviewing court will not disturb a clearly articulated credibility finding where there is substantial evidence in the record to support the finding.  *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  The ALJ's reasons for discrediting Norred's testimony of disabling pain were both clearly articulated and supported by substantial evidence.  After a careful review of the record, the court concludes that the ALJ properly discounted Key's testimony of pain.

### B.  The Opinions of Medical Personnel

Norred asserts that the ALJ improperly discounted her treating physician's opinion  that she suffers from moderate pain which "would cause some handicap in the performance of the activity precipitating the pain."  (R. 220.)  She also asserts that the ALJ improperly discounted the physician assistant's opinion that her back pain would prevent her from sustaining a full-time job.  (R. 194.)  The law is well-settled;  the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986);  *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must

8

articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion.  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

The ALJ discounted Dr. Stewart's and Mr. Caypless' opinion regarding the severity of Norred's back pain.  Specifically, the ALJ determined that the treating sources' opinions are not supported by the medical evidence.  (R. 19.)  As previously discussed, the x-ray indicating that Norred suffers from "degenerative arthritic change" and "slight disk narrowing at L5-S1" does not support Dr. Stewart's opinion that she suffers from debilitating pain.  Although the record demonstrates that Norred received treatment for her complaints of back pain in March and April of 2002, no additional evidence supports her contention that she suffers from these episodes frequently.

After conducting a review of the record and the ALJ's decision, the court finds that the ALJ carefully examined the medical reports, including the assessments of Norred's personal physician and the physician's assistant, in conjunction with Norred's allegations regarding her condition.  The ALJ scrupulously detailed Norred's medical history and noted contradictions between her complaints and the medical evidence.   Thus, the court concludes that substantial evidence supports the ALJ's decision to discount the treating sources' opinions regarding the severity of Norred's back pain.

## C.  The Failure to Clarify Ambiguities in the Record

Norred asserts that the ALJ ignored the determinations of the consultative psychologist and the vocational expert concerning her ability to respond appropriately to supervision, coworkers, and other pressures in a work setting.  An ALJ cannot substitute his judgment for that of the medical and vocational experts.  *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.

9

1982).  In her analysis, the ALJ concluded that Norred retained the residual functional capacity to perform the exertional demands of light work, specifically noting that "Dr. [John] Gam was of the opinion that the claimant's depression was not severe enough to prevent her from maintaining substantial gainful employment on a sustained basis." (R. 19.)  The court has reviewed Dr. Gam's comprehensive psychological evaluation report.  (R. 187.)  Although it is clear that Dr. Gam determined that Norred "does not have depression that is severe enough to hamper her from maintaining substantially gainful employment on a sustained basis," he also concluded that Norred "will have moderate to marked impairment in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." (*Id.*)  Thus, Dr. Gam's specific findings regarding Norred's ability to work are ambiguous.[9]  The ALJ did not reconcile Dr. Gam's conclusion that Norred's "marked to moderate" impairment would affect her ability to work with his finding that her depression would not prevent her from maintaining substantial gainful employment.  When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected a physician's opinion.  Due to the ambiguous statements in the report, this court is unable to determine whether the ALJ's determination regarding Dr. Gam's medical opinion is supported by substantial evidence in the record.

Compounding Gam's ambiguities is the ALJ's failure to discuss the vocational expert's determination with respect to Dr. Gam's finding that Norred has a "moderate to marked impairment in her ability to respond to supervision, coworkers, and work pressures."  During the

---

[9]That ambiguity is heightened by Gam's conclusion that "[e]motional factors . . . do not appear to have played a significant part in her overall cognitive functioning." (R. 185)

10

questioning of the vocational expert, the following exchange occurred:

> Q:   Okay.  Give a description of a moderate to marked impairment, and that description comes from 5F, which is the consultative exam, the psychological consultative exam.  I want to make sure I got it right.  Okay.  The description is moderate to marked impairment in her ability as described.  How do you assess that range?

> A:   Vocationally the classification of mild and moderate, of which moderate falls, does not prevent work, because it really has no impact as far as a person being able to function in day to day operations.  When it gets marked or moderately severe in vocational terminology to extreme or severe, that prevents work, so obviously it's moderate to marked, I can only conclude from that as identified in the hypothetical should your Honor find it reaches no more than moderate then that would allow work, but if it's marked or is marked during the normal work day for even an hour, that would preclude work.

(R. 246-47.)  The ALJ concluded that Gam's assessment was that *overall* Norred's impairments were moderate.  However, the vocational expert focused specifically on Norred's ability to respond appropriately to supervision , concluding that if that ability was moderately to markedly impaired, Norred could not work.  The ALJ reached no conclusion about this more specific aspect of Norred's abilities.

Given that the ALJ failed to clarify these ambiguities and address with particularity the extent of her response to supervision impairment, it is impossible for the court to determine whether the ALJ's decision to deny benefits was rational and supported by substantial evidence.  The court therefore concludes that this case is due to be remanded for the limited purpose of clarifying ambiguities in the record concerning the severity of Norred's inability to respond

appropriately to supervision.

A separate final judgment will be entered.

Done this 23rd day of August, 2005.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE